CHRISTOPHER C. HIGGINBOTHAM, PLAINTIFF IN ER-
ROR, VS. THE STATE OF FLORIDA, DEFENDANT IN
ERROR.

Criminal Law—Larceny—Claim of Right To Property Taken—
Reiterating Instructions Already Given—Opinion Evidence—
Motion to Strike Evidence—Verdicts, Faulty Spelling In—Ap-
pellate Practice, Evidence Used on Motion for New Trial
Must Be Exhibited By Bill of Exceptions.

1. It is not error to refuse to give instructions that have already
been given substantially, though couched in different language.

2. Where one in good faith takes the property of another, hon-
estly believing it to be his own, or that he has a right to its
possession, he is exempt from the charge of larceny; but such
belief should be an honest one, and not a mere pretense to
shield himself from punishment.

3. While, as a general rule, witnesses are required to testify to
facts, and to withhold their opinions derived from such facts,
yet there are exceptional cases, and one of such exceptions is
that "the physical or mental condition or appearance of a
person, or his manner, habit, or conduct, may be proved by
the opinion of an ordinary witness, founded on observation."
"An inference necessarily involving certain facts may be stated
without the facts, the inference being an equivalent to a specifi-
cation of the facts; but, when the facts are not necessarily in-
volved in the inference, then the facts must be stated. In
other words, when the opinion is the mere shorthand render-
ing of the facts, then the opinion can be given. Opinion, so
far as it consists of a statement of an effect produced on the
mind, becomes primary evidence, and hence admissible, when-
ever a condition of things is such that it cannot be reproduced
and made palpable in the concrete to the jury."

4. Where part of a witness' answer to a question is admissible
and part inadmissible, a motion to strike such answer is prop-
erly refused unless it is confined specifically to the inadmis-
sible part of such answer.

5. Verdicts in criminal cases should be certain, and impart a
definite meaning, free from ambiguity. Any words that con-
vey, beyond reasonable doubt, the meaning and intention of
the jury, are sufficient, and all fair intendments should be

·made to sustain them. If the *intention* is clearly manifested, bad spelling or faulty grammar will not vitiate the verdict.

6. An appellate court cannot consider affidavits used in support of a motion for new trial, unless they are evidenced to it in and by a bill of exceptions.

Writ of Error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion of the Court.

*Raymond B. Bullock*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

TAYLOR, C. J.

The plaintiff in error, hereinafter referred to as the defendant, was indicted at the Fall term 1899 of the Circuit Court for Marion county for the larceny of a cow, and was tried, convicted and sentenced at the Spring term, 1900, of said court and seeks a reversal by writ of error. The defendant at the trial requested four several charges that were refused to be given, upon the ground, as expressed by the judge in his ruling thereon, that they had already been given in substance in other charges. After examination we agree with the Circuit Judge that all of the instructions thus requested and refused, though couched in different language, had already been substantially given in charge to the jury, and this being true, it is settled here for a long line of decisions that there was no error in refusing them, even though they correctly stated the law. Sherman v. State, 17 Fla. 888, Carter v. State 22 Fla. 553; Reddick

v. State, 25 Fla. 112, 5 South. Rep. 704; Coleman v.
State, 26 Fla. 61, 7 South. Rep. 367; Pinson v. State, 28
Fla. 735, 9 South. Rep. 706; Killins v. State, 28 Fla.
313, 9 South. Rep. 711; Bryant v. State, 34 Fla. 291, 16
South. Rep. 177; Butler v. State, 35 Fla. 246, 17 South.
Rep. 551.

The judge gave the following instruction that was
excepted to and is assigned as error: "Where one in
good faith takes the property of another, honestly be-
lieving it to be his own, or that he has a right to its
possession, he is exempt from the charge of larceny,
there being no criminal intent; and, therefore, if the
jury believe from the evidence that the defendant Hig-
ginbotham took the cow of Reynolds, as alleged in the
indictment, honestly believing it to be his own, or that
he had a right to its possession, the jury should find him
not guilty; but the belief should be an honest one, and
not a mere pretence to shield himself from conviction.
Furthermore, if the jury have a reasonable doubt, aris-
ing from the evidence, as to whether Higginbotham
took the said cow, having such an honest belief as to his
right to take it, the jury should give him the benefit
of such reasonable doubt and acquit him; in other
words, if they have a reasonable doubt of the felonious
intent of the defendant in taking the cow they should
acquit the defendant." The contention made here is that
the last paragraph of this charge is erroneous, mislead-
ing and confusing to the jury in its use of the word
"whether." That it has a tendency to mislead the jury
into the belief that the onus was on the defendant to
convince them beyond a reasonable doubt that he took
the cow, honestly believing that he had a right to take
it. We do not think the charge susceptible of any such

construction; but, on the contrary, think that it stated the law correctly.

The prosecuting witness for the State, J. W. Reynolds, after testifying that he went to the defendant's slaughter pen at about daylight in the morning and found the defendant in the act of butchering the cow in question, was asked the following question by the State Attorney: "When you went up there, and found your cow in Mr. Higginbotham's slaughter house, how did he appear, how did he look when you approached him?" The question was objected to on the ground that it sought the opinion of the witness and was therefore inadmissible. The objection was overruled, and such ruling, is assigned as error. The witness answered as follows: "He looked plum lost, could say nothing, could hardly talk, choked up like, looked just like a man who had done something and been caught up with, nervous like." The defendant moved to strike out this answer on the ground that it was an expression of opinion by the witness; the judge overruled the motion and such ruling is assigned as error. There was no error in either of these rulings. While, as a general rule, witnesses are required to testify to facts, and to withhold their opinions derived from such facts, yet there are exceptional cases, and one of such exceptions is that "the physical or mental condition or appearance of a person, or his manner, habit or conduct, may be proved by the opinion of an ordinary witness, founded on observation." Rule 64, p. 466, Lawson's Expert and Opinion Evidence. The line of distinction between cases where an ordinary witness is permitted to testify to his opinion or conclusions, and those where it is not permissible, is tersely stated in Wharton's Cr. Ev., §§ 458, 459 and 460, as follows:

"An inference necessarily involving certain facts may be stated without the facts, the inference being an equivalent to a specification of the facts; but when the facts are not necessarily involved in the inference (e. g., when the inference may be sustained upon any one of several distinct phases of fact, none of which it necessarily involves), then the facts must be stated. In other words, when the opinion is the mere shorthand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based. Opinion so far as it consists of a statement of an effect produced on the mind, becomes primary evidence, and hence admissible whenever a condition of things is such that it can not be reproduced and made palpable in the concrete to the jury." Mann v. State, 23 Fla. 610, 3 South. Rep. 207; Commonwealth v. Sturtivant, 117 Mass. 122, S. C. 19 Am. Rep. 401; Carney v. State, 79 Ala. 14; People v. Lilly, 38 Mich. 270; Tobin v. Shaw 45 Me. 331, S. C. 71 Am. Dec. 547; Culver v. Dwight, 6 Gray, 444; State v. Hudson, 50 Iowa, 157; Carroll v. State, 23 Ala. 28, S. C. 58 Am. Dec. 282; Brownell v. People, 38 Mich. 732. Had the defendant confined his motion to strike the witness' answer specifically to that portion of the answer that speaks as follows: "looked just like a man who had done something and been caught up with," it would have been proper for the court to have stricken it out, as that part of the answer improperly states the conclusion of the witness as to the cause of the confused, nervous and uneasy appearance of the defendant. But the motion sought to strike out the entire answer, and in the form made it was properly overruled. Where part of a witness' answer to a question is admissible, and part inadmissible, a motion to

37 A

strike should be confined specifically to the part that is inadmissible.

The verdict returned by the jury is as follows: "We, the jury find the defendant *'guily.'*—W. C. Bull, Foreman." The legal sufficiency of this verdict is questioned by the eleventh and seventeenth assignments of error, alleging error in its reception by the court, and in the refusal of the motion for new trial based thereon. There was no error here. In the case of Charlie Long v. State, decided at the present term, wherein the verdict was: "We, the jury, find the *defendant guilty* as charged," and which was held in that case to be sufficient, it is said: "Verdicts in criminal cases should be certain and import a definite meaning, free from ambiguity. Any words which convey, beyond reasonable doubt, the meaning and intention of the jury are sufficient, and all fair intendments will be made to support the verdict. If the intention is clearly manifested, bad spelling or faulty grammar will not vitiate the verdict." See authorities there cited.

The twelfth assignment of error based upon the denial of the motion for new trial on the ground of the supposed admission of opinion evidence by the prosecuting witness has already been discussed and disposed of.

The thirteenth assignment of error involves, through the denial of the motion for new trial, the refusal of the court to give the four instructions requested by the defendant, that has already been disposed of above.

The fourteenth assignment of error is expressly abandoned.

The fifteenth assignment of error involves, through the denial of the motion for new trial, the giving by the

court of the second, instruction to the jury, that has been already disposed of above. So, also, have assignments of error numbers sixteen and seventeen.

The eighteenth assignment of error is expressly abandond.

The nineteenth and twentieth assignments of error contend that the court below erred in refusing the motion for new trial on the grounds that the verdict was contrary to the evidence, and without evidence to support it. It will be useless to cumber the records with a rehearsal of the voluminous testimony in the case. It is sufficient to say that though it was conflicting, that for the State was abundantly sufficient to sustain the verdict found. The jury by their verdict have settled the conflicts on the side of the State, and it is not for the appellate court to interfere with their solution of it, in the absence of anything tending to suggest that it was induced by influences *dehors* the evidence in the case.

The twenty-first assignment of error is abandoned here.

The twenty-second and last assignment of error is the denial of the motion for new trial upon the ground of newly discvovered evidence. The motion for new trial is copied twice in the transcript. It appears first in the *record paper*, and is there followed by affidavits purporting to sustain the ground therein of newly discovered evidence; then it appears again by itself, unaccompanied by any affidavits, in the bill of exceptions. The universal rule established here as well as in other American courts is that an appellate court can not consider affidavits used in support of a motion for new trial unless they are evidenced to it by a bill of exceptions. Reynolds v. State, 33 Fla. 301, 14 South, Rep. 723; Stewart v.

Wyoming Cattle Ranch Co., 128 U. S. 383, 9 Sup. Ct. Rep. 101; Ross v. Garey, 7 How. (Miss.) 47; Anderson v. Sloan, 1 Colo. 33; Von Glahn v. Brennan, 81 Cal. 261, 22 Pac. Rep. 596; Ray v. Mason, 6 Neb. 101; Berry v. Smith, 2 Okla. 345, 35 Pac. Rep. 576; Vanderbilt v. Johnson, 3 Scam. (Ill.) 48; Matlock v. Todd, 19 Ind. 130; Perego v. Dodge, 9 Utah, 3, 33 Pac. Rep. 221. And in Merchants National Bank of Jacksonville v. Grunthal, 38 Fla. 93, 20 South. Rep. 809, it is said: "The only evidence for an appellate court as to matters that appear of *record* is the *record proper*, duly certified by the clerk of the court who is the custodian of them; and, as to matters *not of record*, or *in pais*, the judge's certificate to a bill of exceptions containing them is the only evidence." Affidavits presented to the trial court in support of motions for new trial are purely matters *in pias* that can be authoritatively evidenced to an appelate court for review only in and by a bill of exceptions duly certified and signed by the trial judge. Their incorporation in the *record proper* in this case furnishes no evidence to this court that any such affidavits were presented to or considered by the trial judge on the hearing of the motion for new trial. It follows that in so far this court is permitted to consider the ground of newly discovered evidence in the motion for new trial, there is no properly authenticated evidence before us of the fact that there was any newly discovered evidence upon which this ground of the motion for new trial could have been sustained, and there was, therefore, no error in its refusal.

Finding no error, the judgment of the court below is hereby affirmed.